UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PORT WASHINGTON TEACHERS'
ASSOCIATION, AMERICAN FEDERATION
OF TEACHERS, LOCAL 2938, NYSUT,
AFL-CIO, MARY ANNE CARIELLO,
as President of the Port Washington
Teachers' Association, and MICHELE
WEIDEN, on behalf of themselves and the
female students of the Port Washington             04-CV-1357
Union Free School District,                        (TCP) (WDW)

                              Plaintiffs,          **MEMORANDUM
                                                   AND
              - against -                          ORDER**

BOARD OF EDUCATION OF THE
PORT WASHINGTON UNION FREE
SCHOOL DISTRICT; LAURA MOGUL,
NANCY V. COWLES, MARK MARCELLUS,
DEAN NARDONE, DR. ROY NELSON,
ROBERT SEIDEN, and DAVID STROM,
as members of the Board of Education of the
Port Washington Union Free School District and
in their individual capacities; and
DR. GEOFFREY N. GORDON, as
Superintendent of the Port Washington Union
Free School District and in his individual capacity,

                              Defendants.
------------------------------------------------------------X

PLATT, District Judge.

              Before the Court is Board of Education ("Board") of the Port

Washington Union Free School District ("District"); Laura Mogul; Nancy V.

Cowles; Mark Marcellus; Dean Nardon; Dr. Roy Nelson; Robert Seiden; and David Strom, (collectively "Board of Education Members"); and Dr. Geoffrey N. Gordon's ("Superintendent" or "Gordon"), (collectively "School District" or "Defendants"), motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim, respectively. For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

This action was brought by the Port Washington Teachers' Association ("PWTA"); the American Federation of Teachers ("AFT"); Local 2938; the New York State United Teachers ("NYSUT"); the American Federation of Labor-Congress of Industrial Organizations ("AFL-CIO"), Mary Anne Cariello, President of the Teachers' Association ("Cariello"); and Michele Weiden ("Weiden"), (collectively "Union" or "Plaintiffs"), on behalf of themselves and the female students of the Port Washington Union Free School District seeking injunctive and declaratory relief as well as damages arising from the Defendants' alleged violation of constitutional, statutory and privilege norms in the implementation of its pregnancy notification policy.

On November 12, 2002, Dr. Geoffrey N. Gordon, the District's Superintendent of Schools, issued a staff memorandum which set forth guidance

regarding the "right and responsibility" of District staff, including school nurses, to inform a student's parents that she is pregnant ("Policy"). (Pl.'s Ex. A). The memo reminds District staff that a student's disclosure of her pregnancy to any staff member is "not a communication protected by legal privilege," and that in fact, such a disclosure may trigger legal reporting obligations. (Id.). The Policy requires that staff members who become aware of a student's pregnancy "should immediately" report it to a school social worker. (Id.). The social worker should "encourage" the student to voluntarily disclose her pregnancy to her parents, and if the student represents that she will inform her parents, confirm that such a disclosure was made. (Id.). If the student "refuses" to voluntarily inform her parents, the social worker should offer to meet with the parents and the student to help the student inform her parents and/or offer to inform the student's parents without the student being present. (Id.). If the student "continues to insist" on keeping the information from her parents, the social worker should inform the student that she/he will inform the parents. (Id.). "After consultation with the Principal and Superintendent, the social worker should inform the parents." (Id.).

On March 1, 2004, Plaintiffs filed a complaint in this Court, alleging that the District's Policy violated third-party students' constitutional rights to due process, privacy, and equal protection; and that it violated Title IX, New York Public Health Law § 2504(3), and New York Civil Practice and Rules

§§ 4507 and 4508(a). On September 5, 2004, the Plaintiffs filed a motion for a preliminary injunction. On November 8th and 9th of 2004, the Court held a two-day evidentiary hearing on the preliminary injunction motion. At the hearing, this Court denied the Plaintiffs' request for a temporary restraining order, finding that there was no irreparable harm or "imminent danger" to the continued implementation of the Policy. On March 22, 2005, the Court denied the motion for a preliminary injunction. See Port Washington Teachers' Assoc. v. Port Washington Bd. of Educ., 361 F. Supp. 2d 69 (E.D.N.Y. 2005).

## DISCUSSION

### I.    Applicable Legal Standards

Rule 12(b)(6) permits both partial and complete dismissal for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss a complaint for failure to state a claim, the Court must assume as true all allegations contained in the complaint and assess only whether Plaintiffs have pled claims on which they are entitled to discovery. Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000).

The Court may dismiss a complaint for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate the case. Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182,

1187 (2d Cir. 1996). When considering a motion to dismiss for lack of subject matter jurisdiction, a court may look to materials other than the pleadings to decide the jurisdictional question. Sharp v. Bivona, 304 F. Supp. 2d 357, 362 (E.D.N.Y. 2004) (citing Robinson v. Gov't of Malaysia, 269 F.3d 133, 141 n.6 (2d Cir. 2001)). The Court must accept as true all facts alleged in the complaint, but the Court may not make inferences in favor of the party asserting jurisdiction. Smith v. Barnhart, 293 F. Supp. 2d 252, 254 (E.D.N.Y. 2003).

The standards for dismissal under 12(b)(6) and 12(b)(1) are virtually identical. Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2003) (citing Moore v. Painewebber, Inc., 189 F.3d 165, 178-179 (2d Cir. 1999)). The motion should be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Formica v. Town of Huntington, 1996 U.S. App. LEXIS 31031, at *4 (2d Cir. Sept. 19, 1996) (citation omitted); Fortress Bible Church v. Feiner, 2004 U.S. Dist. LEXIS 9614, at *3 (S.D.N.Y. March 29, 2004) (citing Sec. Investor Prot. Corp. v. BDO Seidman, LLP, 222 F.3d 63, 68 (2d Cir. 2000)). The only practical distinction is that "the party invoking the jurisdiction of the court has the burden of proof in a 12(b)(1) motion, in contrast to a 12(b)(6) motion, in which the defendant has the burden of proof." Lerner, 318 F.3d at 128 (citing Thompson v. County of Franklin, 15 F.3d 245, 248 (2d Cir. 1994)).

## II. The Parties' Arguments

Defendants' raise several arguments in support of their motion to dismiss. First, Defendants' argue that Plaintiffs have failed to establish third-party standing on behalf of third-party female students in the District in that Plaintiffs have not suffered an "injury in fact." Second, Plaintiffs cannot prove a constitutional or statutory violation because there is no right to privacy preventing parental notification of a student's pregnancy and no school employee-student privilege protecting communications between the same. In their reply papers, Defendants also argue that Plaintiffs have failed to establish the existence of a ripe or justiciable case or controversy.

Plaintiffs argue in response that Plaintiffs have suffered an injury in fact in that they are "unable to practice their professions without violating either the female students' Constitutional and statutory rights or the ethical canons, regulations, and privilege statutes by which Plaintiffs are bound." (Pl.'s Opp. Mem. at 7-8). Plaintiffs further argue that the Policy violates female students' constitutional right to privacy respecting their pregnancy and maintain that such a right does exist under the Constitution. Plaintiffs also argue that the Policy is contrary to New York public policy as expressed in New York Public Health Law § 2504(3), which does not require parental notification or consent before a minor obtain an abortion or medical care relating to a pregnancy. Lastly,

Plaintiffs argue that the Policy violates New York State's privilege statutes which protect information exchanged between a patient or client and her social worker. <u>See</u> CPLR § 4508.

## III.    Analysis

The arguments asserted by both Defendants and Plaintiffs are essentially the same as those asserted in connection with the Motion for a Preliminary Injunction.  Thus, the Court's analysis concerning the issues raised is wholly consistent with the Court's prior decision in this case.  <u>See</u> <u>Port Washington Teachers' Assoc. v. Port Washington Bd. of Educ.</u>, 361 F. Supp. 2d 69 (E.D.N.Y. 2005) (Platt, J.).  Nonetheless, for the purpose of fully addressing the motion to dismiss, some of this Court's prior analysis will be repeated herein.

### A.    Case or Controversy

Article III of the U.S. Constitution requires that the matter have crystalized into a live case or controversy before the Court may weigh the merits of the action.  In this case, the bedrock requirements of ripeness and standing are lacking, and thus the Court lacks subject matter jurisdiction over the case. Standing requires that the litigant have a practical interest in the outcome and not merely be interested in setting a legal precedent.  <u>Kowalski v. Tesmer</u>, 125 S.Ct. 564, 567 (2004).  Ripeness refers to whether the harm for which a remedy is sought has matured sufficiently to warrant judicial intervention.  <u>Thomas v. Union</u>

Carbide Agricultural Prods. Co., 473 U.S. 568, 580-81 (1985).

**i.    Standing**

As a preliminary matter, the motion to dismiss is granted because Plaintiffs do not have standing in this case.  "[A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he has personally suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant."  Vermont Right to Life Committee, Inc. v. Sorrell, 221 F.3d 376, 382 (2d Cir. 2000) (quoting Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982) (citation and internal quotation marks omitted)).  In a case, such as this one, where the Plaintiffs purport to bring suit on behalf of a third party, the Plaintiffs must still establish the threshold requirement that they have suffered an "injury in fact" before asserting the third party's interest.  Singleton v. Wulff, 428 U.S. 106, 112 (1976).  Accordingly, third party standing may be granted if it is shown that (i) the litigant has suffered an injury in fact such that the litigant has a "sufficiently concrete interest" in the outcome, (ii) the enjoyment of the right is inextricably bound up with the activity that the litigant wishes to pursue, (iii) the litigant would be as effective a proponent of the right as the third party, and (iv) the third party is unable to assert her own right because there is some "genuine obstacle to such assertion."  Id. at 112-116.  These limitations on third party

standing represent a "healthy concern that if the claim is brought by someone other than one at whom the constitutional protection is aimed, the courts might be called upon to decide abstract questions of wide public significance." <u>Kowalski</u>, 125 S.Ct. at 568.

Though there can be little disagreement in this case that the third-party students face a "genuine obstacle" to the assertion of their own right to privacy,[1] the Plaintiffs' assertion of standing fails the first prong of the <u>Singleton</u> test. The Plaintiffs have not suffered an "injury in fact" because they face no repercussions from the Policy. Defendants claim that the cases relied upon by Plaintiffs require that the litigant face criminal liability, monetary damages, or termination of one's job if he does not comply with the school policy – a consequence the Defendants claim is not present here. (Defs.' Mem. at 7). Plaintiffs essentially concede that no injury has yet occurred; nonetheless, they assert that they will suffer an injury in fact because they are faced with the

---

[1] The Supreme Court has held that there is a genuine obstacle facing a woman who seeks to assert her right to privacy regarding her decision to obtain an abortion. <u>Singleton</u>, 428 U.S. at 117. A woman may be "chilled from such assertion by a desire to protect the very privacy of her decision from the publicity of a court suit." <u>Id.</u> It is easy to imagine that this obstacle is present with even greater force for a female minor, who may, among other things, fear punishment from her parents or ridicule at school should her attempt to protect her privacy become public.

Hobson's choice of either defying what they consider to be a mandatory Policy[2] and potentially losing their jobs or following the Policy and being in violation of constitutional, statutory and privilege norms.

Plaintiffs have not satisfied the standard for a pre-enforcement challenge. Plaintiffs who "challenge[] a statute [before its enforcement] must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." <u>Babbitt v. United Farm Workers Nat'l Union</u>, 442 U.S. 289, 298 (1979) (citation omitted). "A plaintiff bringing a pre-enforcement facial challenge against a statute need not demonstrate to a certainty that it will be prosecuted under the statute to show injury, but only that it has an 'actual and well-founded fear that the law will be enforced against' it." <u>Vermont Right to Life Committee, Inc. v. Sorrell</u>, 221 F.3d 376, 382 (2d Cir. 2000) (quoting <u>Virginia v. American Booksellers Ass'n</u>, 484 U.S. 383, 393 (1988)).

Plaintiffs have not demonstrated a realistic danger of any negative

---

[2] Plaintiffs seize upon the "should" language in the Policy to show that it requires mandatory compliance by school officials. ( Pl.'s Exh. A) ("After consultation with the Principal and Superintendent, the social worker should inform the parents"). For example, the Policy states at the outset, "This memorandum is to clarify the right and <u>responsibility</u> of district staff, including school nurses, to inform a student's parents that she is pregnant." (<u>Id.</u>) (emphasis supplied). However, the Defendants claim and demonstrated at the hearing that the Policy is not mandatory and that the Superintendent and Principal may exercise their discretion to refrain from notifying the parents. (Gordon Aff. ¶¶ 15-19; Tr. 214-16).

consequence flowing to the Plaintiffs from the Policy. When considering the hearing testimony, which the Court is permitted to do on a motion to dismiss for lack of subject matter jurisdiction, (see Sharp v. Bivona, 304 F. Supp. 2d 357, 362 (E.D.N.Y. 2004) (citing Robinson v. Gov't of Malaysia, 269 F.3d 133, 141 n.6 (2d Cir. 2001)), it is apparent that Plaintiffs had no reason to believe that their jobs were at risk if they violated the Policy. First, Dr. Gordon testified that the Policy was not mandatory and that its application was discretionary. (Tr. 214-216) (terming the Policy a "guideline" and describing the availability of a "bypass" for a student that comes from, inter alia, a "difficult home situation"). Further, Plaintiff Weiden testified that she did not speak with Dr. Gordon regarding the meaning of nor the existence of any flexibility in the Policy, thus showing she had no reasonable foundation for her beliefs regarding the consequences of the Policy. (Tr. 80-82). Moreover, Dr. Gordon testified that he had no intention of disciplining staff members for failing to comply with the Policy. (Tr. 235-236). Indeed, Weiden conceded that she had never been faced or threatened with any disciplinary action, suffered any loss or threatened loss in salary, or undergone any transfer or change in assignment due to the Policy. (Tr. 74). Moreover, the number of students who seek Weiden as a counselor has "remained essentially the same" since the issuance of the memo. (Tr. 74-75). In fact, when asked if she "felt aggrieved in this case by the memo," Weiden

answered, "No."  (Tr. 75).

Moreover, as is discussed <u>infra</u> in section III(B), the Court does not believe that the Policy violates any constitutional principles or State statutes; and thus, the Plaintiffs may not base their injury in fact on those grounds.

In the case of Plaintiffs Mary Anne Cariello and the PWTA, the injury in fact is even more attenuated.  According to Cariello's testimony, the PWTA is the bargaining unit for the teachers in the District.  (Tr. 114).  As such, they "represent the teachers and try to solve problems, if problems arise for teachers in the performance of their jobs as employees of the district."  (Tr. 117). Since the teachers do not in fact face disciplinary action for failure to implement the Policy, then the PWTA may not then claim as a whole to suffer an injury in fact pursuant to the rules of third-party standing.

Accordingly, since the Plaintiffs have not established third party standing in this case and consequently subject matter jurisdiction, the motion to dismiss is granted.

ii.     **Ripeness**

The motion to dismiss is also granted on the ground of lack of ripeness.  The ripeness doctrine is premised on the recognition that judicial decision-making is best conducted in the context of an actual controversy rather than in a hypothetical exercise of a parade of horribles.  A claim is not ripe for

adjudication if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998). In testing the ripeness of a matter, the Court will look at (i) the fitness of the issues for judicial decision and (ii) the hardship to the parties of withholding court consideration. Id. at 301 (citation omitted). In assessing the possible hardship to the parties resulting from withholding judicial resolution, the Court must ask whether the challenged action creates a "direct and immediate dilemma" for the parties. Marchi v. Board of Coop. Educ. Servs. of Albany, 173 F.3d 469, 478 (2d Cir. 1999) (citations omitted).

The Court finds that the issues raised in this case are ill-suited for judicial resolution at this stage and that the parties will suffer no undue hardship by the Court withholding consideration. Weiden testified that only about two (2) students per year report being pregnant at Schreiber High School and of those teens "nearly all" of them voluntarily report their pregnancies to their parents. (Tr. 78-79). To date, since the memo was issued in November of 2002, there have only been approximately four (4) students concerned that they might be pregnant who have come to Weiden. (Tr. 42). Of those four students, two never confirmed with the school that they were pregnant and two had already voluntarily informed their parents of the pregnancy. (Tr. 34-42). Given the infrequency in the need to invoke the Policy as well as the unlikelihood of a

pregnant third-party student who would not want to disclose her pregnancy to her parents for reasons that she felt were in her best interest, it is improbable that the issues raised herein would ever be ripe for adjudication. However, it is just this kind of speculation in which the Court may not engage. <u>Marchi</u>, 173 F.3d at 478 (finding that the court would be forced to guess at how the defendants might apply the directive in the case and to pronounce on the "validity of numerous possible applications of the directive, all highly fact-specific and, as of yet, hypothetical. Such an open-ended and indefinite challenge is not well suited to judicial decision.").

Even if this Court were to find that this case presented a justiciable case or controversy, it would still find that the Policy does not implicate any lurking constitutional, State law or privilege considerations.[3] Thus, the motion to dismiss is also granted because the Plaintiffs have failed to state a claim for which relief can be granted.

## B.     Alleged Constitutional and Statutory Violations

### i.     Constitutional Violations

Plaintiffs claim that the Policy violates the female students' constitutional right to privacy. (Pls.' Opp. Mem. at 9-14). According to

---

[3] The Plaintiffs have in part based their claims of an injury in fact for standing purposes on alleged constitutional violations.

Plaintiffs, the Policy implicates what the Supreme Court has recognized as a right to privacy for females in making health decisions, including those involving pregnancy, pre-natal care, and abortion.  Plaintiffs further assert that a student's right to privacy is coextensive with that of adult females.  <u>Hodgson v. Minnesota</u>, 497 U.S. 417, 435 (1990) (citations omitted) ("the constitutional protection against unjustified state intrusion into the process of deciding whether or not to bear a child extends to pregnant minors as well as adult women").  Finally, citing <u>Bellotti v. Baird</u>, 443 U.S. 622 (1979), the Plaintiffs claim that the Defendants must show that the notification Policy at issue contains a judicial bypass procedure in order to pass constitutional muster.

The Court does not believe – as the Plaintiffs assert – that the <u>Bellotti</u> test for mandatory parental consent to abortion needs to be satisfied here. In <u>Bellotti</u>, the Supreme Court held that if the State were to require a pregnant minor to obtain one or both parents' consent to an abortion, it must also provide a judicial bypass alternative.  443 U.S. 622, 643 (1979).  In such a bypass proceeding, a pregnant minor would be entitled to judicial authorization of her abortion if she could satisfy the twin requirements of showing that she is mature enough to make the decision and that the desired abortion would be in her best interests.  <u>Id.</u>

<u>Bellotti</u>, and the other cases upon which the Plaintiffs rely, all

involve laws requiring either parental consent for abortion[4] or parental notification prior to abortion.[5]  As Defendants correctly point out, the United States Supreme Court has never held that a parental notification of pregnancy policy is subject to a judicial bypass requirement.  (Defs.' Reply Mem. at 5).  In fact, the Supreme Court has never addressed a mere parental notification of pregnancy policy.  Even after oral argument, the opportunity to file post-hearing briefs on the motion for a preliminary injunction, and briefing on this motion, Plaintiffs utterly fail to address whether there is a distinction between notification of pregnancy and consent/notification to abortion.  This Court continues to believe that there is.

The Policy at issue here does not address abortion; it merely provides for notification of a student's pregnancy.  The Court does not accept Plaintiffs' attempt to blur the distinction between the well-settled protections that apply to a minor seeking an abortion and the unrecognized protections claimed by Plaintiffs to prevent the disclosure of a minor's pregnancy to her parents.  No Court has created such a right to privacy for minors, and the Court here declines

---

[4] See, e.g., Bellotti, 443 U.S. at 642 (involving Massachusetts parental consent to abortion statute); Planned Parenthood v. Danforth, 428 U.S. 52 (1976) (involving Missouri parental consent statute).

[5] See, e.g., Hodgson v. Minnesota, 497 U.S. 417 (1990) (involving Minnesota parental notification of abortion statute).

to do so as well.

Plaintiffs' inaccurately cite to <u>Hodgson v. Minnesota</u>, 497 U.S. 417, 434 (1990), for the proposition that "[p]laintiff female students have a right to privacy in any information regarding their pregnancy, as well as any decisions that they make with respect to the pregnancy." (Pl.'s Opp. Mem. at 9). <u>Hodgson</u> did not so hold. In fact, the Court's holding was limited to "the decision to conceive or to bear a child." 497 U.S. at 434. The cases cited by the Court concerned either the right to privacy in decisions concerning contraception or abortion. <u>Id.</u> In no way did <u>Hodgson</u> express an opinion as to the constitutionality of a minor's desire to keep confidential the fact that she is pregnant. Plaintiffs' unblinking and steadfast reliance on the consent to abortion line of cases is thus misplaced.

In addition, the Court does not believe that the abortion notification line of cases is applicable here. The distinction between notification of abortion and notification of pregnancy is not a formalistic one. Parental notification of a student's pregnancy does not intrude on the student's right to ultimately seek an abortion or to carry her fetus to term. Since the Policy here poses an even lesser invasion on the student than the burden at issue in the abortion notification cases, the Court finds the standards in those cases inapplicable to the Policy here. Thus, the Plaintiffs' attempt to fit their case into

these precedents is unavailing.

Even if this Court were to decide that this case were subject to the lower constitutional standards of the abortion notification laws – which it does not – the Policy would stand because it provides the Superintendent and Principal discretion as to its application. The Courts in the parental notification cases have found that notification of abortion is far less burdensome than the consent to abortion situation. See, e.g., Hodgson, 497 U.S. at 496. For example, in Planned Parenthood of the Blue Ridge v. Camblos, the Court held that the Virginia Parental Notice Act, which required minors seeking an abortion to notify one or more parents, was constitutional because it contained exceptions for students in abusive or neglectful family situations. 155 F.3d 352, 375 (4th Cir. 1998), cert. denied, 119 S. Ct. 1031 (1999). Since this Policy also contains such exceptions, it would pass this test with flying colors.

The Court finds similarly lacking in constitutional basis Plaintiffs' claim of a violation of the pregnant minor's right to equal protection. Plaintiffs assert, without providing the Court with any authority in support, that the Policy is unconstitutional because it does not apply to male students who impregnate someone. Pls.' Opp. Mem. at 4. The Court has previously held that the male counterpart to a pregnant female enjoys no constitutional protections with respect to the pregnancy. See, e.g., Arnold v. Board of Educ. of Escambia County, 880

F.2d 305, 312 (11th Cir. 1989) ("Inasmuch as it is the woman who physically bears the child and who is more directly and immediately affected by the pregnancy, as between the two, the balance weighs in her favor.") (citing <u>Planned Parenthood of Central Missouri v. Danforth</u>, 428 U.S. 52, 71 (1976)).  Thus, in the Court's view, the Policy does not run afoul of the Equal Protection Clause.

### ii.     State laws and confidentiality considerations

The Court is equally convinced that the Policy is not in derogation of any State laws or professional confidentiality obligations.  Plaintiffs identify various State statutes governing public health to create a duty of confidentiality.  As a threshold matter, however, those laws discussing abortion or prenatal care are inapplicable here because as explained above, the Policy here does not on its face implicate these decisions. <u>See, e.g.</u>, N.Y. Pub. Health Law § 2504(3) (McKinney 2005) (stating "[a]ny person who is pregnant may give effective consent for medical, dental, and health and hospital services relating to prenatal care").

Contrary to Plaintiffs' arguments, New York State law obligates a school to inform parents of the conditions that affect the health, safety, and welfare of their children.  <u>See</u> 8 N.Y.C.R.R. § 136.3 (a)(5) (providing that "it is the duty of the trustees and boards of education...to advise, in writing, the parent or guardian of each child in whom any aspect of the total school health service

program indicates a defect, disability or other condition which may require professional attention with regard to health"). New York law does not exclude pregnancy from the list of "conditions" which may require professional attention and of which parents must be advised. If a pregnant student was harmed (through pregnancy complications or otherwise) after it came to the school's attention that the student were pregnant, failure to inform the parents of the student's pregnancy would likely result in the imposition of civil and perhaps criminal liability.

Moreover, federal law would also seem to require that a school disclose a student's pregnancy to her parents. See Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232(g). FERPA mandates that schools that receive federal funding may not deny parents access to "educational records." Id. FERPA broadly defines "educational records" to include any materials which "contain information directly related to a student; and are maintained by an educational agency or institution." § 1232(g)(4)(A)(i)(ii). Such a broad definition would seem to cover records evidencing the pregnancy of a student.

### iii. Privilege

With respect to the Plaintiffs' privilege claims, the Court must draw a distinction between private, licensed medical or psychological professionals and school employees. Hence, it matters not that New York law

may provide for a duty of confidentiality for private social workers.  <u>See</u> N.Y.

C.P.L.R. § 4508 (McKinney 2005) ("A person duly registered as a certified social

worker... shall not be required to disclose a communication made by his client to

him, or his advice given thereon, in the course of his professional employment").

As the Court clearly stated in <u>Board of Educ. of  N.Y. (Philip Stern)</u>, 31 Ed. Dep't

Rep. 378, 380, 1992 NY Educ. Dept. LEXIS 321, at *6 (March 20, 1992),

"Petitioner's reliance upon [C.P.L.R. § 4508] is misplaced.  The school social

worker is a paid employee of the school district who does not receive

compensation from students or their parents.  No decision of the courts or the

Commissioner of Education has yet granted privilege status to communications

between a student and school personnel."  This Court has been unable to find any

authority to the contrary.

       Plaintiffs' citations to <u>Philip Stern</u>, concerning disciplinary charges

against a tenured teacher, and <u>Matter of Charles R.R.</u>, a juvenile delinquency

proceeding, are misleading at best.  Plaintiffs claim that in <u>Philip Stern</u> the

"Commissioner's decision was based upon the fact that the student, who

otherwise might have asserted the social worker-client privilege, had waived it

when she testified . . . " and that in <u>Charles R.R.</u> the decision was issued "on the

basis of the respondent's failure to assert any privilege, not on a finding that no

privilege existed."  (Pl.'s Opp. Mem. at 16).  In sharp contrast to Plaintiffs'

assertions, the courts therein did not hold that any such privilege existed. In <u>dicta</u>, the courts stated that even if such a privilege existed, it was waived either by the student's testimony concerning communications which may have otherwise been privileged or by the failure to assert any such privilege. <u>Philip Stern</u>, at *6; <u>Charles R.R.</u>, 166 A.D.2d at 764. Moreover, both of these decisions were concerned with a testimonial privilege, whereas the Court herein is concerned with the more limited scenario of whether the professional must disclose to the student's parents the fact of her pregnancy.

Thus, there are no constitutional, statutory or privilege norms governing the situation posed here. In addition, as a policy matter, it is the parent's – and not the school's – responsibility to make decisions in the best interests of their child. "Public schools must not forget that '<u>in loco parentis</u>' does not mean 'displace parents.'" <u>Gruenke v. Seip</u>, 225 F.3d 290, 307 (3d Cir. 2000) (expressing "considerable doubt" as to whether school counselors may withhold information of a student's pregnancy from her parents). The Supreme Court has recognized that the "tradition of parental authority is not inconsistent with our tradition of individual liberty; rather the former is one of the basic presuppositions of the latter." <u>Bellotti v. Baird</u>, 443 U.S. 622, 638 (1979) (Powell, J.). "There can be little doubt that the State furthers a constitutionally permissible end by encouraging an unmarried pregnant minor to seek the help and

advice of her parents in making the very important decision whether or not to bear a child." Planned Parenthood of Central Missouri v. Danforth, 428 U.S. 52, 91 (1976) (Stewart, J., concurring)).  Here as well, the Policy is within the bounds of the Constitution in requiring nothing more than parental notification of a student's pregnancy.

## CONCLUSION

By virtue of the foregoing, Defendants' motion to dismiss is

GRANTED in its entirety.

SO ORDERED.

_____s/s_____
Thomas C. Platt, U.S.D.J.

Dated: Central Islip, New York
        January 4, 2006